IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

JASON DEAN KELLEY )
)
v. ) NO. 1:14-0035
)
ENOCH GEORGE, et al. )

TO: Honorable William J. Haynes, Jr., Senior District Judge

# REPORT AND RECOMENDATION

By Order entered October 29, 2014 (Docket Entry No. 42), this action was referred to the Magistrate Judge. Presently pending before the Court is the motion for summary judgment (Docket Entry No. 75) of Defendants Floyd Sealey and Connie Trull, to which the Plaintiff has filed a response in opposition (Docket Entry No. 82). Set out below is the Court's recommendation for disposition of the motion.

## I. BACKGROUND

The Plaintiff is currently an inmate of the Tennessee Department of Correction confined at the South Central Correctional Facility in Clifton, Tennessee. On March 5, 2014, he filed this action pro se and in forma pauperis under 42 U.S.C. § 1983 asserting that his civil rights had been violated during his confinement in the Maury County Jail ("Jail") in 2013. The Plaintiff asserts that he was incarcerated at the Jail on March 5, 2013, and remained there until April 11, 2013, when he was

transferred to the Morgan County Correctional Complex. He alleges that he suffers from an "auto-immune split cell skin disease" that causes rashes, sores, and lesions on his face and chest, see Complaint (Docket Entry No. l), at 4, and contends that he was not provided with proper treatment for the condition while at the Jail despite filling out numerous sick call slips and grievances about the need for treatment. He alleges that, even though he informed the medical staff that he had been prescribed a medicated cream to treat the condition prior to entering the Jail, he was not provided with this cream and that the cream that he was given by medical staff was not effective. As a result of not receiving the medicated cream, the Plaintiff alleges that he suffered pain and scarring to his face. Id. at 8.

Seeking injunctive, declaratory, and monetary relief, the Plaintiff sued nurse Floyd Sealey, Maury County Sheriff Enoch George, and an unnamed nurse. By Order entered June 18, 2014 (Docket Entry No. 30), the Court dismissed Defendant George from the action upon his motion after finding that the Plaintiff had not alleged any facts that stated a claim against George as the sheriff or individually, but the Court found that the Plaintiff's complaint contained sufficient allegations to state a claim for relief against Defendant Sealey. The Plaintiff subsequently identified Connie Trull as the unnamed nurse and filed an amended complaint (Docket Entry No. 72). Pursuant to scheduling orders (Docket Entry Nos. 42 and 61), the parties were provided with a period of time within which to engage in discovery and file pre-trial motions. All deadlines have expired.

By their motion for summary judgment, Defendants Sealey and Trull contend that there are no genuine issues of material fact and they are entitled to a judgment in their favor as a matter of law with respect to the Plaintiffs claim that his constitutional rights were violated. They argue that there are no facts supporting a conclusion that the Plaintiff suffered from a serious medical need or that

they acted with deliberate indifference toward the Plaintiff during the brief period that he was confined at the Jail. In support of their motion, the Defendants submit the affidavit of Floyd Sealey (Docket Entry No.75-1), excerpts from the Plaintiff's deposition (Docket Entry No. 75-2), a Statement of Undisputed Material Facts (Docket Entry No. 76), and a copy of portions of the Plaintiff's medical records and other documents (Docket Entry No. 78).

The Plaintiff filed a response (Docket Entry No. 82) to the Defendants' Statement of Undisputed Facts which meshes together both his responses to the numbered paragraphs in the Defendants' Statement of Undisputed Facts and his arguments against dismissal. The Plaintiff argues that there is evidence that he was not provided with adequate medical care for his skin condition while at the Jail. Specifically, he contends that his medical records show that he had been prescribed medicated creams while incarcerated at the Jail in 2010, at other institutions from 2009 to 2012, and at the Morgan County Correctional Complex after leaving the Jail in April 2013, but that the Defendants, despite his numerous complaints, essentially ignored his condition while he was at the Jail in 2013. In support, the Plaintiff submits copies of various medical records. See Docket Entry No. 82-1. Also before the Court is a letter from the Plaintiff. See Docket Entry No. 83.

## II. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable

jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a

well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

### III. CONSTITUTIONAL STANDARDS

The Eighth Amendment prohibits the wanton and unnecessary infliction of pain upon a prison inmate. Whitley v. Albers, 475 U.S. 312, 319-20, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). This constitutional protection prevents prison officials from depriving inmates of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), and imposes upon prison officials an obligation to provide a certain level of medical care for the individuals it incarcerates. Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Id. at 103.

Because the Eighth Amendment does not protect against ordinary torts, a prisoner plaintiff must show that he was subjected to deprivations that are of a constitutional magnitude. See Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987). With respect to allegations of inadequate medical treatment, a prisoner plaintiff must show that he

5

had a "sufficiently serious" medical need, Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 897 (6th Cir. 2004); Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001), and that the prison official acted with deliberate indifference, as opposed to mere inattentiveness. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Although "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference," Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834, 843–44 (6th Cir. 2002) (internal quotation marks and citation omitted), it is well settled that neither negligence nor medical malpractice will support a constitutional claim. See Estelle, 429 U.S. at 106; Walker v. Norris, 917 F.2d 1449, 1454 (6th Cir. 1990); Roberts v. City of Troy, 773 F.2d 720, 724 (6th Cir. 1985).

## IV. ANALYSIS

There is no real dispute that the Plaintiff suffers from a chronic skin condition that causes a rash and sores to appear on his skin, as well as a burning sensation, if left untreated.[1] There is also no dispute that, prior to entering the Jail in 2013, the Plaintiff had been previously prescribed various medicated creams to treat this condition, see Docket Entry No. 82-1, at 17-21, 23, 28, and 33-40, and that he had been given prescriptions for Fluticaonse .05% cream and Mupirocin 2% ointment as recently as January 17, 2013, by a free world medical provider.[2] See Docket Entry No. 78, at 5-6.

---

[1] The Plaintiff identifies his condition as dermatitis. See Docket Entry No. 83. His medical records indicate that he has, at various times, been diagnosed as suffering from psoriasis, seborrheic dermatitis, rosacea, and eczema. See Docket Entry No. 82-1, at 18, 27-28, 31, 35, and 52.

[2] Although the Plaintiff appears to have incorrectly identified the medical clinic that prescribed the creams as "Fast Pace Medical Clinic," it is obvious from the pharmacy records provided by the Defendants that he was prescribed these and other medications by Dr. E. Norwood in Columbia, TN. See Docket Entry No. 78, at 5-6.

Further, it is undisputed that, after leaving the Jail and being examined at the Morgan County Correctional Complex on April 18, 2013, he was prescribed and provided with a medicated cream and also prescribed Prednisone to treat this condition. See Docket Entry No. 82-1, at 51-52.

Nonetheless, what is also undisputed is that the Plaintiff was not suffering from an outbreak of skin irritation when he entered the Jail and did not bring with him to the Jail any of the medicated creams that he had been prescribed in January 2013. See Plaintiff's Deposition (Docket Entry No. 75-2, at 59-60, and Docket Entry No. 82, at 5, ¶ 15. It is also undisputed that, upon the Plaintiff filling out medical request forms on March 8 and 14, 2013, about his need for the prescription creams, the medical staff at the Jail checked on the status of any outstanding prescriptions for the Plaintiff and determined that he did not have a current prescription for any medicated creams. See Docket Entry No. 78, at 1-2. It is further undisputed that, upon the Plaintiff's complaints about his skin condition becoming irritated and his need for a prescribed cream, see Docket Entry No. 82-1, at 4-6 and 14-15, he was evaluated by Defendant Sealey on March 29, 2013, see Affidavit of Sealey (Docket Entry No. 76), at 6, ¶ 24; Plaintiff's Deposition (Docket Entry No. 75-2), at 67-68, and, upon the directive of Defendant Trull, he was given an over-the-counter, anti-inflammatory cream on or about March 31, 2013. See Docket Entry No. 82-1, at 9 and 12-13.

There is no indication from the evidence before the Court that any treatment was provided to the Plaintiff for his skin condition other than the cream given to him on March 31, 2013, and the medical staff did not respond to the medical request forms that he filled out in early April regarding his skin condition. Id. at 7-8. It is finally undisputed that the Plaintiff left the Jail on April 11, 2013, was given a prescription cream by the medical staff at the Morgan County Correctional Complex, id. at 51-52, and that his skin irritation diminished within two weeks and was not noted as an issue

7

by a TDOC physician who conducted a physical examination of the Plaintiff on April 24, 2013. Id. at 53; Plaintiff's Deposition, at 83-84.

Although the Court acknowledges that the frustration felt by the Plaintiff while at the Jail was not entirely unfounded and while this lawsuit appears to the Court to be something that could have easily been avoided,[3] the facts before the Court are simply insufficient to support a conclusion by a reasonable jury that the Defendants violated the Plaintiff's constitutional rights under the Eighth Amendment. Only four weeks elapsed from the March 14, 2013, medical request, in which the Plaintiff first noted that his skin condition was becoming irritated, to the Plaintiff departure from the Jail on April 11, 2013. During this brief time period, the medical staff at the Jail verified with an outside pharmacy that the Plaintiff did not have a current prescription for a medicated cream, Defendant Sealey saw the Plaintiff, and the Plaintiff was provided with an over-the-counter medication. While it is true that several of the Plaintiff's written medical request forms went unanswered while he was at the Jail, the Plaintiff was not, in fact, ignored with respect to his medical condition even if the condition ultimately did not improve until he subsequently received a different treatment after leaving the Jail. Furthermore, there is no medical evidence before the Court that the Plaintiff's condition, although alleged by him to be painful, created a substantial risk of serious harm to him. See Miller v. Calhoun Cnty., 408 F.3d 803, 812 (6th Cir. 2005). Under these facts, the Plaintiff fails to show that he suffered from an objectively serious medical condition. See Santiago

---

[3] While it true that the Plaintiff did not have a current prescription for a medicated cream at the time he entered the Jail, it is nonetheless apparent that he had been prescribed such creams a mere 47 days prior to entering the Jail. Further, his inmate medical records clearly show that he had been provided with medicated creams by prison medical staff during previous confinements, including during a prior stay at the Jail. Had the medical staff at the Jail simply followed this minimal treatment regimen by providing the Plaintiff with the already identified medicated cream at issue, this lawsuit would have been avoided.

v. Ringle, 734 F.3d 585, 590 (6th Cir. 2013) (prisoner who, despite receiving some treatment, waited approximately one month for a specific, recommended treatment for a painful skin condition failed to satisfy the objective component of his Eighth Amendment claim).

The Plaintiff's claim essentially amounts to a challenge to the adequacy of the treatment he received at the Jail and is based upon his desire for more prompt and attentive treatment. However, the Eighth Amendment does not guarantee that a prison inmate receive the "optimum or best medical treatment." Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir. 1982). When a prisoner has received some medical attention and the dispute is over the adequacy of that care, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law, Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Even if mistakes in diagnosis and treatment are made, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," Estelle, 429 U.S. at 106; Dominguez v. Correctional Medical Services, 555 F.3d 543, 550 (6th Cir .2009). See Comstock, 273 F.3d at 703 ("When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs."). Summary judgment should be granted to the Defendants.

## RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that the Defendants' motion for summary judgment (Docket Entry No. 75) be GRANTED and this action be DISMISSED WITH PREJUDICE.

The Court further RECOMMENDS that any appeal NOT be certified under 28 U.S.C. § 1915(a)(3) as taken in good faith.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge